UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SUSAN KAY METES,

    Plaintiff,

v.                                                                     CASE NO. 2:18-CV-726-FtM-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

    This is an appeal of the administrative denial of disability insurance benefits (DIB) and period of disability benefits. *See* 42 U.S.C. § 405(g). In this appeal, Plaintiff contends the ALJ erred in formulating her residual functional capacity (RFC) and in concluding she is capable of performing her past relevant work. She also claims the ALJ failed to properly evaluate her credibility, specifically in light of her 44-year work history. After considering the parties' joint memorandum of law (doc. 24) and the administrative record (doc. 17), I find that the ALJ's decision that Plaintiff is not disabled is in accordance with the law and supported by substantial evidence; I affirm the Commissioner's decision.

    *A.*    *Background*

    Plaintiff Susan Kay Metes was born on March 29, 1954, and was 61 years old on her alleged onset date, March 1, 2016. Plaintiff completed a two-year nursing program at Elgin College, and worked in a variety of nursing jobs since 1977 including nursing supervisor and Director of Nurses (R. 35-36). Plaintiff's last job as Director of Nursing at Our Lady of Angels Retirement ended in November 2015 when Plaintiff was terminated after a clash with the retirement home's new administrator (R. 39-40, 845). Plaintiff received unemployment benefits

1

for six months thereafter, then searched for new jobs but felt incapable of performing both the physical and mental demands of the job descriptions (R. 40, 56). Plaintiff testified she is unable to work due to leg and back pain, arthritis in her left hand, vision problems subsequent to a stroke, difficulty swallowing due to Barrett's esophagus, insomnia, and depression (R. 43-48). She lives in a home with her adult son who has bipolar disorder. She explained that at times Plaintiff uses a cane to help ambulate smoothly, and has trouble recalling names and events due to insomnia. She performs household chores, albeit slowly; she cooks, vacuums, and does her own laundry (R. 48). She grocery shops, mows her lawn with a tractor, cares for her two dogs and a cat, and handles her own banking (R. 49). Plaintiff's hobbies include cooling off in her above-ground pool, boating, gardening, visiting neighbors and family, and going to the beach to lay in the sand (R. 50). Plaintiff testified that she can walk a long block then needs to rest her legs, she can stand for half an hour, and can sit for a couple of hours at a time (R. 51). She says she can lift a 25-pound bag of dog food and carry it into her house, she can climb stairs "but it is a chore," and can pick things up off of the floor (R. 53). She has difficulty reaching above her shoulders and has problems with her left hand (R. 52). She testified that she has fallen about every few months and has a fear of falling (R. 54). The relevant time period for DIB purposes is narrow – from her alleged onset date of March 1, 2016, to December 31, 2019 (Plaintiff's date of last insured, or DLI).

After a hearing, the ALJ found that Plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar spine and history of cerebral infarction with vision disturbance (R. 13). The ALJ determined that Plaintiff is not disabled, because she retains the RFC to perform light work as defined in 20 CFR § 404.1567(b) except as follows:

> The claimant can only occasionally climb ramps and stairs, stoop, crouch, and crawl, but can frequently balance and kneel. The claimant can never climb ladders and scaffolds. The claimant can frequently handle and finger with the non-dominant left upper extremity. The claimant should avoid

2

> concentrated exposure to vibration and avoid all exposure to unprotected heights. Finally, the claimant can do no work requiring reading very small print or seeing small parts, but can read a computer monitor and regular print.

(R. 16). With the assistance of a vocational expert (VE), the ALJ found that, with this RFC, Plaintiff could perform her past relevant work as a House Care Facility Administrator, as generally performed in the national economy (R. 20-21). Plaintiff appealed the ALJ's decision, but the Appeals Council denied review (R. 1-2). After exhausting his administrative remedies, Plaintiff filed this action.

### B. *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations. These regulations establish a "sequential evaluation process" to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part

404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    *Discussion*

        *1. RFC*

Plaintiff complains that the ALJ erred by formulating an RFC that fails to account for her limitations in concentration, persistence, and pace resulting from depression and pain. Relatedly, she argues that the ALJ erred by finding her capable of performing her past relevant work as a

Health Care Facility Administrator, a highly skilled job with a Specific Vocational Preparation level of 8.[1]

Under the statutory and regulatory scheme, a claimant's RFC is a formulation ultimately reserved for the ALJ, not a treating provider or a State Agency physician or psychologist. Limitations in the RFC must be supported in the record, however, the ALJ's RFC findings need not mirror or match a treating provider's opinions (after all, the responsibility for assessing the RFC rests with the ALJ). *See Bloodsworth*, 703 F.2d at 1239. In reaching his RFC, the ALJ thoroughly summarized the medical evidence. He discussed Plaintiff's severe impairments, as well as her non-severe impairments, Barrett's esophagus accompanied by gastroesophageal reflux disease (GERD), non-specific gastritis, cataract surgery with lens implantation, hypertension and hyperlipidemia, pain in her left hand diagnosed as osteopenia and osteoarthritis, and anxiety and depression (R. 13-14). As to her anxiety and depression, the ALJ discussed Plaintiff's unfortunate history of abuse and unhealthy relationships during her childhood and young adult life, but the ALJ noted a September 2016 evaluation found her mood and affect within normal limits and her attitude cooperative (R. 14). The ALJ stated the examiner described Plaintiff's speech content as sometimes rambling and tangential, but also noted she was appropriately oriented, solved a simple math problem correctly on her first attempt, and gave an accurate meaning or understanding of a posed proverb (R. 14). While her memory was below average, her attention and concentration appeared within normal limits (R. 14). Most importantly, the ALJ discussed the fact that Plaintiff

---

[1] SVP is defined in the Dictionary of Occupational Titles (DOT) as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* http://www.occupationalinfo.org/appendix_1.html (from that page, select "11. Specific Vocational Preparation (SVP)"). An SVP of 8 means that preparation for the job should take "[o]ver 4 years up to and including 10 years." *Id*.

did not seek psychiatric care. Rather, she saw Diane Colonello, a therapist, from March 2017 through August 2017 who advised Plaintiff on her difficult relationships with her bipolar son, friends, neighbors and family. As the ALJ discussed, Colonello's records "noted a number of external stressors in the form of family and friends with mental health and addiction problems" and "[t]he claimant struggled to help her friends and relatives during their times of crisis, but reported feeling calmer and less troubled by mental health symptoms during times of fewer external stressors." In evaluating Plaintiff's paragraph B areas of mental functioning, the ALJ found Plaintiff had only mild limitations in all four areas: understanding, remembering, or applying information; interacting with others; concentration, persistence and pace; and adapting or managing oneself (R. 14-15). As to his conclusion that she is only mildly limited in concentration, persistence, and pace, the ALJ stated:

> Although the claimant noted some difficulty with concentration and persistence, she attributed these problems mostly to her chronic pain. Notably, the claimant's psychotherapist noted that she would likely experience some mild to moderate limitations in concentrating and attending to tasks. However, objective testing of the claimant's concentration and attention during the relevant period showed both within normal limits, and the claimant correctly spelled the word "world" backward and forward and counted backward by serial threes without error during her consultative examination. Accordingly, the record supports finding a mild limitation in this area.

(R. 15). The ALJ opined that "[o]verall, the claimant's medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." (R. 14).

In support of his RFC finding, the ALJ considered all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on 20 C.F.R. § 404.1529 and SSR 16-3p. He also considered the opinion

evidence as required by 20 C.F.R. § 404.1527 and evaluated Plaintiff's subjective complaints as required by the Eleventh Circuit's pain standard. He discussed Plaintiff's testimony that she is unable to work secondary to constant pain in her back and legs. He concluded that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (R. 16-17).

To support his evaluation, the ALJ thoroughly discussed Plaintiff's treatment and long history of back pain beginning prior to her alleged onset date. The ALJ detailed her radiological evidence that showed degenerative disc changes at L3-L4, L4-L5, and L5-S1; but noted that despite her pain she showed full range of motion and remained independent in her daily activities including maintaining her own home, and enjoying outings such as flea market shopping, boating and gardening (R. 17). The ALJ addressed Plaintiff's "wobbly gait," noting that examination revealed she could walk on her heels and toes without difficulty, ambulated without an assistive device, and showed no difficulty rising from a chair or getting on and off the exam table (R. 17). The ALJ also discussed evidence that contradicted Plaintiff's reports of the limiting effects of her symptoms. For instance, Plaintiff reported caring for her pets, including feeding and watering them, bathing the dogs, and carrying 25lb. bags of dog food into the house (R. 18). She prepared simple meals for herself with enough to eat as leftovers, shopped up to two hours for necessities, and drove herself to the store (R. 18).

As required, the ALJ considered the opinion evidence in the record too. Notably, he discussed the opinions of Eric Wiener, Ph.D. and George Grubbs, Psy.D., State Agency consultants who reviewed Plaintiff's medical records on September 28, 2016, and November 30,

7

2016, respectively. Both concluded Plaintiff's mental impairments did not cause more than mild limitations in the areas of mental functioning. The Disability Determination Report Mental provides:

> 9/26/16 MSE: mood and affect WNLs; cooperative attitude; thought content and processes WNLs; speech quality clear and normal rhythm; speech content rambling and tangential; psychomotor activity WNLs; oriented x 3; intellectual ability below average; abstract reasoning WNLs; immediate memory below average; recent memory WNLs; remote memory below average; attention and concentration WNLs; insight and judgment adequate; denied SI/HI, plan or intent. Dx: MDD, recurrent, severe; Cannabis Use D/O, mild; Tobacco Use D/O, moderate. Capable of managing her own finances.

(R. 71). The report's ADLs section provides:

> Clt lives with her son who has mental health impairments. Clt takes care of her son. Clt is not using a HHAD to ambulate. Clt has her driver's license and she drives. Clt is able to shower, brush her hair and teeth, and dress and undress; however it takes longer to do due to her leg and back pain. Clt cooks and completes household chores. Clt us able to do yard work if she takes her times. Clt goes grocery shopping. Clt is able to manage her own finances, pay bills, and make purchases at stores. Clt pays her bills online and checks her email daily. Clt has girl friends that she spends time with. Clt will go shopping with them. Clt reads the newspaper every morning and does the crossword puzzle. Clt does household chores throughout the day. Clt watches television occasionally. Clt takes her brother to his doctor's appointments.

(R. 71). The report states that Plaintiff's mental status exam was "intact from a mental perspective" and noted that "the SSA teleclaim applications field observations did not notice any mental difficulties" (R. 71).

The ALJ also discussed the opinions of Cheryl Kasprzak, Psy.D., the consultative psychological examiner who evaluated Plaintiff on September 26, 2016 (R. 844-849). Kasprzak's diagnostic impression was major depressive disorder, recurrent, severe; cannabis use disorder, mild; tobacco use disorder, moderate; and history of radiculopathy, bulging discs, osteoarthritis, Barrett's esophagus, and stroke (R. 847). She opined that "Claimant possess the requisite skills

8

and cognitive capacity to manage finances independently of others" and that she has a "fair [prognosis] for gainful employment" (R. 847). The ALJ assigned Kasprzak's opinions "considerable weight," citing objective testing showed normal concentration and attention, with good insight and judgment (R. 19; 846). In weighing Kasprzak's opinions, the ALJ discussed Plaintiff's testimony that she maintained employment for many years despite experiencing depression and anxiety symptoms and reported doing household chores, shopping for necessities, driving herself, managing her finances, and planning social events with friends and family (R. 19-20). Thus, the ALJ found Kasprzak's opinions consistent with and supported by the record evidence (R. 20).

The ALJ discussed treatment records and opinions from Plaintiff's psychotherapist, Diane Colonello, L.C.S.W., MSW too (R. 20). He stated:

> Ms. Colonello opined that the claimant would have no limitations in social interaction, mild to moderate limitations in concentration and persistence, as well as generally mild limitations in adaptation, but moderate limitations in the ability to tolerate customary work pressures. The undersigned considered this opinion and afforded it partial weight. Although Ms. Colonello is not an acceptable medical source under Social Security regulations, she treated the claimant for a number of months during the relevant time period and obtained familiarity with the claimant's condition. Although Ms. Colonello noted that the claimant would have moderate limitations in maintaining attention and performing at production levels, objective testing of the claimant showed no difficulty with attention and concentration. These inconsistencies suggest that the claimant likely has no more than mild limitations in concentration. Similarly, although Ms. Colonello believed the claimant would have no limitations in social interaction, the record shows some history of interpersonal conflict, and the claimant's therapy records show difficulty setting boundaries with others. Additionally, the claimant testified that she maintained a number of activities of daily living that support only mild limitations in tolerating normal work pressure. The claimant reported that she did household chores, shopped for necessities, drove herself, managed her finances and planned social events with friends and family. Because this opinion is somewhat consistent with the record, the undersigned affords it partial weight.

(R. 20). In objecting to the RFC, Plaintiff does not challenge the weight assigned to her treating psychotherapist and to the consulting psychologists head-on, but she suggests that the ALJ erred by selectively referencing only the evidence that supports an unfavorable disability decision and rejecting other evidence without providing specific reasons for doing so (doc. 24, p.17). She asserts the ALJ erred by failing to adopt Colonello's opinion that she is moderately limited in attention and concentration. And, she asserts generally the ALJ failed to follow 20 C.F.R. § 404.1527(c)(2) in that he should have assigned more weight to Colonello's opinions.

Of course, an ALJ's decision must reflect that he has considered the medical evidence as a whole and that substantial evidence supports his conclusions. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citing *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995). Insofar as the medical evidence includes statements by physicians reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, such statements are opinions requiring the ALJ to state with particularity the weight given to them and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). The following factors are relevant in determining the weight to be given to a physician's opinion: 1) the "[l]ength of [any] treatment relationship and the frequency of examination"; 2) the "[n]ature and extent of [any] treatment relationship"; 3) "[s]upportability"; 4) "[c]onsistency" with other medical evidence in the record; and 5) "[s]pecialization." *Id.* Unfortunately, however, Colonello is a psychotherapist and psychotherapists are excluded from the list of "acceptable medical sources" in the regulations. Hence, her opinions are not considered "medical opinions," and are not entitled to substantial weight. *See* 20 C.F.R. § 404.1513(a); *Stultz v. Comm'r of Soc. Sec.*, 628 Fed. Appx. 665, 668 (11th Cir. 2015). Although an ALJ is not required

to accept the opinion of an individual who is not listed as an "acceptable medical source," information from other sources, such as psychotherapists, "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-3p, 2006 WL 2329939, *3-4 (2006). § 404.1513(d) sets forth that psychotherapist opinions are still evidence that must be considered and can "show the severity of [an] impairment(s) and how it affects [a claimant's] ability to work."

Against this backdrop, I find the ALJ here properly considered Colonello's opinions, including her opinion that Plaintiff would have moderate limitations in the ability to tolerate customary works pressures and mild to moderate limitations in concentration and persistence, and explained his decision to assign them partial weight (R. 20). To the extent that Plaintiff asserts that the state agency and consultative opinions were outdated since they were rendered approximately a year before Plaintiff's treatment with Colonello, there is no error for an ALJ to have relied on allegedly outdated opinions of state agency consultants where the ALJ has all the relevant evidence before him and it is obvious the ALJ had considered all of the evidence. *See Hendricks v. Colvin*, case no. 1:12cv249-CAS, 2013 WL 5962994 (N.D. Fla. Nov. 7, 2013) (citing *Zellner v. Astrue*, case no. 3:08-cv-1205-J-TEM, 2010 WL 1258137 (M.D. Fla. Mar. 29, 2010)) (remanding where ALJ referred only to some of the evidence post-dating the state agency consultation "albeit mostly in a cursory fashion" and where Plaintiff experienced suicidal ideations and was hospitalized for a suicide attempt following the state agency consultation). Looking at the ALJ's decision against the administrative record, I find that the ALJ provided ample reasons for discounting Colonello's opinions and for assigning considerable weight to the opinions of the state agency consultants and consultative psychologist. Upon review, I conclude that the ALJ properly considered all of the evidence, weighed the opinion evidence, and provided good reasons

for discounting opinions that he did not adopt (including the opinions related to concentration, persistence, and pace), as required by the regulations.

Plaintiff next argues that the ALJ failed to account for her pain-related limitations in his RFC. She testified that pain interferes with her sleep, concentration, and ability to sit, stand, and walk for extended periods of time. As the Commissioner indicates, in evaluating Plaintiff's subjective complaints the ALJ properly applied the two-part pain standard, and discussed Plaintiff's daily activities, her conservative treatment, and the objective medical findings. *See* R. 16-18. Moreover, as the Commissioner states, in determining whether substantial evidence supports an ALJ's subjective complaints determination, "the question is not … whether [sic] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F.App'x 935, 939 (11th Cir. 2011). Here, the ALJ opined that the evidence did not support the severity and persistence of Plaintiff's alleged complaints. My careful review shows that the ALJ's decision is supported by substantial evidence and was decided under the correct legal standards.

Ultimately, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c). Based on the substantial evidence the ALJ summarized, the ALJ restricted Plaintiff to a reduced range of light work, and capable of performing her past job as a House Care Facility Administrator as generally performed in the national economy. The task of this Court is simply to determine whether substantial evidence supports the ALJ's decision, not to substitute its judgment for that of the Commissioner. To the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot. Where, as here, the ALJ's findings are based on the correct legal standards and are supported by substantial evidence, the Commissioner's decision

must be affirmed even if I would have reached a different conclusion. *Bloodsworth, supra*, 703 F.2d at 1239.

### 2. work record

Plaintiff's admits that her challenges to the the ALJ's credibility analysis are identical to the challenges she raised regarding the ALJ's RFC finding and I need not address these issues again. In addition, Plaintiff asserts the ALJ erred by failing to acknowledge or discuss her 44-year work history as a nurse ultimately progressing to director of nursing and earning $79,923 the year prior to her alleged date of disability. She states that the SSA's policy set forth in 20 C.F.R. § 404.1529(c)(3), SSR 96-8p, and SSR 16-3p require the ALJ to consider a claimant's demonstrated "willingness to work" in assessing the consistency of her complaints and limitations. While § 404.1529(c)(3) specifies that a claimant's "prior work record" is a factor for an ALJ to consider, it is only one of many factors considered in evaluating subjective complaints. Similarly, SSR 16-3p refers to a claimant's "prior work record," but likewise does not mandate consideration of a claimant's "willingness to work." *See Roane v. Berryhill*, 2017 WL 3613989, *6 (S.D. Ga. July 31, 2017) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991)) ("work history alone does not establish or even enhance a plaintiff's credibility"). Upon consideration, I find the ALJ provided substantial evidence to support his conclusion that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.

In assessing Plaintiff's subjective complaints, the ALJ discussed Plaintiff's long history of lower back pain many years prior to her alleged onset date and her report to her employer in 2010 that she could she could not work anymore due to back pain. He noted that Plaintiff continued to work despite this complaint, and that medical records from that time frame revealed normal strength, normal sensation, and negative straight leg raises. The ALJ also discussed that Plaintiff's

imaging showed no new changes, and her treating providers indicated her reports of pain were not consistent with traditional sciatica and suggested investigation by other specialists. The ALJ noted that 2007 treatment records indicated Plaintiff worried she would lose her job due to difficulty staying asleep at night due to back pain, and that 2014 records show she reported to her physician that she continued to work despite moderate back pain that radiated to her legs (R. 17). In evaluating the opinion evidence, the ALJ noted Plaintiff's normal concentration and attention with good insight and judgment, her reports of daily activities, and her testimony that she maintained her employment for many years despite experiencing anxiety and depression (R. 19). As stated above, the task of this Court is simply to determine whether substantial evidence supports the ALJ's decision, not to substitute its judgment for that of the Commissioner. Because the ALJ's findings are based on the correct legal standards and are supported by substantial evidence, I must affirm the Commissioner's decision. *Bloodsworth, supra*, 703 F.2d at 1239.

D.  *Conclusion*

For the reasons stated above, it is ORDERED:

>  (1) The ALJ's decision is AFFIRMED; and
>
>  (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on October 7, 2019.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE